WILLIAM O'BRIEN and Another v. NORTHWESTERN IMPROVEMENT & BOOM COMPANY.[1]

January 3, 1901.

Nos. 12,273—(141).

**Dam—Negligence.**

> This action is based upon the alleged negligence of the defendant in maintaining and operating a dam across a river navigable for logs, whereby the plaintiffs' logs were thrown out of the channel, to the damage of the plaintiffs. *Held*, that the court did not err in its rulings as to the admission of evidence nor as to its refusal of certain requested instructions, and that the verdict is sustained by the evidence.

Appeal by defendant from an order of the district court for Washington county, Williston, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Clapp & Macartney,* for appellant.

*J. N. Searles,* for respondents.

START, C. J.

The complaint herein alleged four separate causes of action, each based on the operation or maintenance by the defendant of its dam known as "Government Rock Dam" across Kettle river.

The first count was to the effect that in the spring of 1895 the plaintiffs were engaged in driving logs in the river below the dam, and the defendant negligently operated its dam by holding back the water and then discharging it in unusual and unnecessary quantities, whereby the plaintiffs were delayed in making their drive, and the expenses thereof were greatly increased, to their damage in the sum of $8,000. The second was to the effect that in the spring of 1896 the defendant so negligently constructed and maintained its dam that it was washed out, thereby discharg-

[1] Reported in 84 N. W. 735.

ing a flood upon the plaintiffs' drive, whereby their logs were thrown out of the channel, to their damage in the sum of $5,000. The third was based upon the defendant's negligence in constructing and maintaining the dam in 1897, whereby the plaintiffs' logs were carried out of the channel by the washing out of the dam, to their damage in the sum of $2,500. The fourth was to the effect that the defendant so negligently constructed and maintained the dam in the year 1898 that it was again washed out, whereby the plaintiffs' logs were thrown out of the channel, to their damage in the sum of $4,500.

The jury awarded the plaintiffs $2,442.41 on the first cause of action, $1,010.26 on the second, found for the defendant on the third, and awarded the plaintiffs $517.55 on the fourth, and returned a general verdict for the aggregate amount thereof. Special questions were submitted to the jury, and answered, as to the facts of each cause of action. They found that the defendant was negligent in the construction and maintenance of the dam in the years 1896 and 1898, but not in the year 1897. The defendant appealed from an order denying its motion for judgment or a new trial as to each cause of action.

1. The assignment of errors as to the first cause of action relates to the rulings of the trial court as to the admission of evidence, its refusal to give a requested instruction, and to the sufficiency of the evidence to support the verdict. The evidence tends to show that, after the plaintiffs had been driving their logs in the spring of 1895 for a week on a fair stage of water, it fell rapidly away, so that they had to suspend operations. On the next day one of the plaintiffs (Mr. O'Brien) went up to the dam, and found two of its three gates were shut, and the third one raised, which was the only one through which any water ran out, and observed that the water was raised by the dam six or eight inches during a half hour. The dam was in charge of and operated by Peter McMahon for the defendant. It is substantially admitted that whatever he did in the management of the dam was authorized by the defendant. On the witness stand Mr. O'Brien, over the objection and exception of the defendant, testified as follows:

"I told Mr. McMahon the natural run was not going through that dam, and that we had a large crew down the river, and that I would like to have the natural run of the river. 'Well,' he says, 'you are getting the natural run of the river.' Says I, 'You need not tell me that at all, because I have put a mark on it, and this dam has raised six or eight inches since I came here.' 'Well, Bill, I am obeying orders,' or words to that effect; and I don't know that I said any more to him. I saw there was no use talking with him in regard to that. * * * I think I asked him to hoist the gate."

This ruling is the basis of the defendant's first alleged error, and it is claimed that the evidence was incompetent and immaterial, because Mr. McMahon was not such an officer or agent of the defendant that he could bind it by his declarations, which were no part of the res gestæ, for his declaration related to a past transaction. This is a misconception of the evidence, for the conversation between the parties related to the then present acts of the authorized manager of the dam, who was keeping two of the gates shut, and raising the water; hence his declarations were a part of the res gestæ, and were correctly received in evidence. O'Connor v. Chicago, M. & St. P. Ry. Co., 27 Minn. 166, 6 N. W. 481. If it were otherwise, it was harmless error, for what was said by the manager tended only to prove that his acts in operating the dam were the acts of the defendant, an undisputed fact in the case.

The defendant called as a witness Peter McMahon, who testified that the second time he shut the gates to sluice logs Hogan Hanson ordered him to do so. Mr. Hanson was also called as a witness for the defendant, and testified, in substance, that he gave orders as to the closing and opening of the gates on several occasions for the purpose of sluicing logs belonging to a third party, by whom he was employed. The defendant requested the court to give the jury this instruction:

"There is no evidence in the case tending to show that Hogan Hanson was in any way or manner the agent of the defendant, and the defendant is not responsible for any act or negligence on the part of Hogan Hanson which may have caused or contributed to any injury that the plaintiffs may have suffered while driving their logs in Kettle river in the year 1895."

The trial court refused to give this instruction, and the defendant excepted, and here urges the ruling as error. The request was properly refused, for it was immaterial, and misleading. The defendant gave in evidence the orders and acts of Hanson, but for what purpose it is difficult to understand, unless it was for the purpose of justifying the acts of McMahon in operating the dam. But if his acts, considered with reference to the rights of other log owners, were wrongful as to the plaintiffs, the defendant is liable whether or not Hanson ordered or induced him to so do. In view of the evidence, the jury might well have understood from the requested instruction, had it been given, that the defendant would not be responsible for any acts of McMahon which Hanson ordered him to do; therefore it was misleading.

The defendant also excepted to a portion of the general charge of the trial court as to the duties and liabilities of the defendant in operating the dam, and assigns the giving of it as error. It was not, for the instructions upon the subject, taken as a whole, were a correct statement of the law applicable thereto.

The defendant's counsel contend with earnestness and undoubted candor that the evidence was not sufficient to support the verdict in favor of the plaintiffs on the first cause of action. We have carefully considered the evidence with reference to this claim, and have reached the conclusion that the verdict is supported by the evidence. No question is made by the defendant that the plaintiffs were not delayed in their work of driving their logs, and that the expense of making that drive was greatly increased by the fluctuations in the rise and fall of the water in the river. But its claim is that its operation of its own dam was not the responsible cause of such change in the natural flow of the stream.

It will serve no practical purpose to here quote and analyze the evidence. It tends to show that the fluctuations in the flow of the stream were, in the absence of conclusive evidence of any other efficient cause therefor, the result of shutting down of the defendant's dam, thereby securing a head of water, and then raising the gates, and letting the water run out in unusual quantities. There was, however, evidence tending to show that the waters

of the river and its main tributaries were held back by dams therein above the defendant's dam, and over which it had no control, for the purpose of obtaining heads of water for the purpose of creating, by releasing the impounded water, floods for driving purposes, and that this was the cause of the fluctuations in the flow of the stream. If the evidence was conclusive that this was so, the defendant's contention would be entirely correct. But it is not conclusive; on the contrary the cause of such fluctuations was, upon the evidence, a question of fact for the jury. They found against the defendant upon this question, and we cannot disturb their verdict, it having been approved by the trial court.

2. The plaintiffs' second cause of action was based upon the claim that the defendant was guilty of negligence in the construction and maintenance of its dam, by reason of which it was washed out in the spring of 1896, causing a flood, which carried the plaintiffs' logs out of the channel of the stream. It is not questioned by the defendant that the evidence was sufficient to sustain the finding of the jury that the defendant was guilty of negligence in the construction of the dam as claimed. But there was evidence tending to show and the jury specially found that the river below the dam between April 29, and May 4, 1896, rose from natural causes as high or higher than any flood that may have been caused by the breaking away of the dam. The plaintiffs concede that the dam went out on the night of April 29, 1896. The trial court instructed the jury to the effect that, if there are two causes which concur to produce damage, one the negligent act of the defendant, the other an irresponsible cause, and the latter alone would have produced the damage had the first cause not existed, there can be no recovery. The court refused to give to the jury an instruction requested by the defendant in these words:

"If you find from the evidence that the water in Kettle river below the dam in question and at the point where plaintiffs' logs were on and after April 30, 1896, rose from natural causes prior to May 4 as high or higher than any flood that may have been

caused by the breaking away of the dam, then your verdict will be for the defendant on the second cause of action."

This ruling is assigned as error. The instruction was rightly refused, for it did not submit to the jury any question as to whether the flood which was caused by the breaking of the dam was concurrent in its effect with the rise of the water in the river from natural causes between April 29 and May 4. On the contrary, it directs the jury absolutely that their verdict must be for the defendant on the second cause of action if they find that the water below the dam at the point where the plaintiffs' logs were on April 30 rose from natural causes at any time before May 4 as high or higher than the flood which was caused by the breaking away of the dam on April 29. That is, if there was a flood from natural causes after the dam went out, and at any time before May 4, that was as high as the flood caused by the dam when it went out, the verdict must, as a matter of law, be for the defendant. If, as the defendant seems to claim, the evidence would justify a finding that there existed, at the time the dam went out, a flood from natural causes as high or higher than the one caused by the breaking of the dam, which was sufficient to cause the damages the plaintiffs suffered, and it was the purpose of the requested instruction to present this question to the jury, it is clear that the language used does not disclose such purpose. The construction which we have put upon the request is its obvious meaning. If the plaintiffs' loss was occasioned by the breaking of the dam before the natural flood came down, the defendant would be liable if the breaking of the dam was due to its negligence; hence the request was erroneous, and properly refused.

3. The plaintiffs' right to recover on the fourth cause of action rests upon substantially the same questions which we have considered with reference to the second cause of action. There are, however, two alleged errors which are peculiar to the fourth cause of action. They are to the effect that the court erred in receiving evidence of an expert as to how the wings of the dam where joined onto the frame-work of the dam should have been constructed, and that the verdict is not supported by the evidence. We have consid-

ered these questions, and hold that the verdict is supported by the evidence, and that it was not reversible error to admit the evidence complained of.

Order affirmed.