FUGITT v. FARRELL. (No. 8766.)

(Court of Civil Appeals of Texas. Dallas. March 24, 1923. Rehearing Denied May 5, 1923.)

1. **Appeal and error ☞1062(1)—Error in requested issues harmless in view of submission of issue that if answered affirmatively other issues need not be answered.**

In suit for damages caused by an overflow of plaintiff's land where defendant's special issue was submitted under instruction that if this issue were answered in the affirmative no other issues need be answered, and no error was assigned on this instruction, any error in reference to issues requested by plaintiff, which under the above instruction were not answered, became harmless.

2. **Trial ☞232(2)—Instruction on theory that property would have been damaged by other agencies subsequent to defendant's negligence held error.**

In suit for damages caused by an overflow of plaintiff's land, where there was evidence as to whether breaks in various railway dumps, other than defendant's, and a dam concurred with the break in the dump of defendant's railway to cause the damage, a special issue as to whether plaintiff's land would have overflowed and caused damage to plaintiff if defendant's railroad at such time had not been in existence submitted with an instruction that such issue could not be answered "No" unless it was first found that plaintiff's land would not have overflowed had defendant's railroad not been in existence at that time rested on the theory that there could be no recovery if plaintiff's property would have been damaged by any of the other agencies susbequent to the damage occasioned by defendant's negligence, and was error.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by J. F. Fugitt against H. T. Farrell. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

John White, Parks & Hall, and J. H. Synnott, all of Dallas, for appellant.

Head, Dillard, Smith, Macey & Head, of Sherman, for appellee.

JONES, C. J. Appellant, J. F. Fugitt, brought this suit in the district court of Dallas county against appellee, H. T. Farrell, to recover damages caused by an overflow of his land by the west fork of the

Trinity river. It was appellant's theory that the damages resulting from the overflow were caused by the negligent construction and maintenance of a railway owned by appellee and extending across his land in the general direction of north and south and running from appellee's gravel pit to an intersection with the main line of the Texas & Pacific Railway. Appellee's railroad was approximately one and three quarter miles in length. The damages claimed were for a permanent injury to appellant's land, destruction of personal property located on the land, and on account of sickness and suffering inflicted upon appellant following the overflow of his land, which sickness was alleged to have been caused by exposure necessarily brought upon him by this overflow. Appellant placed his damages at $49,120. He owned approximately 30 acres of land located about 7 miles west of Dallas and on the outside of the horseshoe bend in the river. The land was situated on the north side of the river, the northern boundary line being approximately 250 yards from the river, and the southern boundary line being the center of its bed, both lines being about one-fourth of a mile in length. Appellant lived on this land, his house being situated about 40 feet from the north bank of the river. The location of the house was on the highest ground of this land. The land on the south side of the river, opposite appellant's land, was on the inside of this horseshoe bend and was about 7 feet lower than his land. Appellee's gravel pit was located about three-quarters of a mile north of appellant's house, and the railroad constructed went entirely across appellant's land and crossed the river on a bridge nearly opposite appellant's house, and extended south for about a mile across this horseshoe bend to a junction with the Texas & Pacific Railroad. The Texas & Pacific Railroad ran approximately east and west and was built on a dump in this vicinity of varying height, averaging perhaps six or seven feet. South of the Texas & Pacific Railroad was the track of the interurban railway, running parallel with the Texas & Pacific Railroad and also built on a dump of varying height somewhat similar to that of the Texas & Pacific Railroad. Still further south was Mountain creek, coming into this vicinity from the higher ground. A dam or dike was constructed across this stream at a distance of about four miles from appellant's land.

Before appellee constructed this railroad, he secured from appellant and his wife a deed to the right of way, for which he paid a consideration of $350.

It is not necessary to a disposition of the case to state the pleadings of the parties at

---

any great length. It was alleged in the petition that appellee's railroad was negligently constructed and negligently maintained; that the bridge across Trinity river was negligently constructed and maintained, and that the railroad was built on a dump several feet in height; that there were not sufficient culverts to permit the proper drainage of the water in times of high water; and that the negligent construction of the bridge was such that it blocked the flow of the water in time of heavy rains and did not permit it to take its natural course. These grounds of negligence are fully and specifically pleaded, and it is alleged that by reason of this negligent construction and maintenance of appellee's railroad appellant's land was caused to be overflowed and his alleged damages resulted.

Appellee alleged in his answer his said purchase of the right of way; that his railway had been built in accordance with the conveyance and contract executed to him by appellant; that it was built in a careful and approved manner; and that the cause of the overflow of appellant's land was because of the heavy rains that had fallen, and especially because of the breaking of the dike or dam across Mountain creek at a point about four miles south of appellant's land, and also by reason of the breaking of the embankments of the Texas & Pacific Railway and the interurban railway.

The case was tried to a jury and submitted on special issues, and, on the verdict returned, a judgment was entered in favor of appellee that appellant take nothing by his suit and be adjudged to pay the costs.

Numerous assignments of error are made to the court's action in the admission and rejection of evidence. We have gone carefully over these assignments and do not find any reversible error shown by any of them, and we do not believe any good purpose can be served by a discussion of these assignments.

[1] The only special issues submitted to the jury were those requested by the parties, and a number of these were submitted to the jury that were responsive to the issues, but, under the direction of the court, not answered. Special issue "C" requested by defendant was submitted by the court to the jury, and the jury instructed that if this issue were answered in the affirmative no other issues need be answered. There is no error assigned on this instruction of the court, though there are assignments of error in reference to some of the issues requested by appellant and given, but which, under the above instruction, were not answered. If there was any error in requesting any of these issues, it thereby became harmless.

[2] Said special issue "C" is as follows:

"Would plaintiff's land, at the time charged in his petition, have overflowed and would plaintiff have suffered the same damage, if any he did suffer, if defendant's railroad at said time had not been in existence. Answer 'Yes' or 'No.'"

In connection with this special issue the following charge was requested by appellee and given:

"You are instructed that you cannot answer 'No' to special issue No. C unless you have first found from a preponderance of the evidence that plaintiff's land would not have overflowed and that plaintiff would not have suffered damages had the railroad of the defendant not been in existence at the time charged in plaintiff's petition, and if you do not so find from a preponderance of the evidence, you will answer 'Yes' to special issue No. C. By the term 'preponderance of evidence' is meant the greater weight of credible testimony."

The jury were further instructed in reference to this issue as follows:

"If you answer 'Yes' to this special issue No. C, you need not answer any other questions or issues propounded to you."

The jury returned a verdict answering special issue "C" in the affirmative, and, in accordance with the instruction of the court, did not answer any of the other issues.

Objections were duly made to the submission of this special issue and to the giving of the requested charge in connection therewith and error duly assigned on the action of the court in overruling these objections and in submitting the issue and charge to the jury. We believe this assignment is well taken. Appellant offered evidence that tendered to sustain all of the allegations in his petition. There was also evidence that tended to establish the fact that regardless of the manner in which appellee's railroad was constructed, and regardless of its existence, appellant would have suffered the same damages he testified he had suffered. The dam across Mountain creek was washed away, and the released waters swept over appellant's land. The various railway dumps, including that of appellee, broke and large volumes of water were thus released to inundate this land. The evidence is in dispute as to whether any or all of these agencies concurred with the breaks in the dump of appellee's railroad to cause the damages. The evidence is also in dispute as to whether appellee's railway dump gave way, and appellant's damages inflicted as the result of such giving way before the operation of any of the other destructive agencies upon appellant's land.

Under this state of the evidence, this special issue and this special charge are given. They necessarily rest upon the erroneous theory that there can be no recovery in this

case if appellant's property would have been damaged and destroyed by the action of any of these other agencies operating upon his land with sufficient force to accomplish the same result, subsequent to the damage and destruction occasioned by appellee's negligence.

"While, of course, it is the general rule that, if there are two causes which concur to produce damage, one the negligent act of the defendant, the other an irresponsible cause, and the latter alone would have produced the damage had the first cause not existed, there can be no recovery. The owner of a dam the giving way of which causes the destruction of a lower dam is not relieved from liability by the circumstance that shortly after the destruction of the lower dam there is a flood from natural causes that is precipitated by the breaking of the upper dam. Where an upper dam gives way and the waters escaping therefrom carry away a lower dam and injure a third, the owner of the third dam is not precluded from recovering damages for injuries thereto from the owner of the upper dam by the fact that the waters from the second dam contributed to the injuries." 27 R. C. L. 1211.

The above quotation, we think, announces the legal principle applicable to the facts of this case. If the special issue had been so framed as to have been responsive to this principle, or if the modifying charge had been drawn in conformity to the doctrine above announced and directed the jury only to a consideration of the issue thus submitted in the light of whether the damages to appellant had been previously inflicted by the other agencies mentioned in the testimony, or these agencies had concurred with the negligence of appellee, if any, in causing appellant's damages, and without the concurring act of appellant's negligence the damages would have occurred anyhow, then the charge would have been correct, and the finding of the jury would have been a final disposition of all the issues in this case. But the charge did not do this. The jury could have believed from the evidence that appellant's damages occurred on one day and that on the next day the flood waters reached such a height that the same damages would have occurred, yet the jury would have been compelled to have answered the question in the affirmative. The jury could also have believed from the evidence that appellant's damages were produced by the negligence of appellee, but yet, if the jury believed that subsequent to the infliction of these damages from either the breaking of the Texas & Pacific Railroad dump or the breaking of the dam across Mountain creek the waters swept over appellant's land with such force and power as to have inflicted the same damages, it would have been compelled to have given the same answer to said question.

In a case somewhat similar to the one at bar the Supreme Court of Minnesota, in O'Brien v. N. W. I. & B., etc., Co., 82 Minn. 136, 84 N. W. 735, announces this same rule of law as follows:

"It is not questioned by the defendant that the evidence was sufficient to sustain the finding of the jury that the defendant was guilty of negligence in the construction of the dam as claimed. But there was evidence tending to show and the jury specially found that the river below the dam between the 29th day of April and the 4th day of May, 1896, rose from natural causes as high or higher than any flood that may have been caused by the breaking away of the dam. The plaintiffs concede that the dam went out on the night of April 29, 1896. The trial court instructed the jury to the effect that, if there are two causes which concur to produce damage, one caused by the negligent act of the defendant, the other an irresponsible cause, and the latter alone would have produced the damage had the first cause not existed, there can be no recovery. The court refused to give to the jury an instruction requested by the defendant in these words: 'If you find from the evidence that the water in Kettle river below the dam in question and at the point where plaintiffs' logs were on and after the 30th day of April, 1896, rose from natural causes prior to May 4th as high or higher than any flood that may have been caused by the breaking away of the dam, then your verdict will be for the defendant on the second cause of action.' This ruling is assigned as error. The instruction was rightly refused, for it did not submit to the jury any question as to whether the flood which was caused by the breaking of the dam was concurrent in its effect with the rise of the water in the river from natural causes between April 29th and May 4th. On the contrary it directs the jury absolutely that their verdict must be for the defendant on the second cause of action if they find that the water below the dam at the point where the plaintiffs' logs were on April 30th rose from natural causes at any time before May 4th as high or higher than the flood which was caused by the breaking away of the dam on April 29th. That is, if there was a flood from natural causes after the dam went out, and at any time before May 4th, that was as high as the flood caused by the dam when it went out, the verdict must, as a matter of law, be for the defendant. If, as the defendant seems to claim, the evidence would justify a finding that there existed, at the time the dam went out, a flood from natural causes as high or higher than the one caused by the breaking of the dam, which was sufficient to cause the damages the plaintiffs suffered, and it was the purpose of the requested instruction to present this question to the jury, it is clear that the language used does not disclose such purpose. The construction which we have put upon the request is its obvious meaning. If the plaintiffs' loss was occasioned by the breaking of the dam before the natural flood came down, the defendant would be liable if the breaking of the dam was due to its negligence; hence the request was erroneous, and properly refused."

While the objections to the charge made by appellant were rather meager, yet they were sufficient to point out the error above

discussed, and the giving of the charge constituted reversible error.

Reversed and remanded.

### On Motion for Rehearing.

Appellee has filed a very elaborate motion for a rehearing. In this motion it is urged that in reversing and remanding this cause, because of the error of the trial court in submitting special issue No. "C," and his special requested charge in connection with said issue, we are in conflict with the opinion of this court in Scott v. Northern Texas Traction Co., 190 S. W. 209, and also in conflict with the principles announced in Railway v. Vogt, 181 S. W. 841.

In the Scott Case, supra, error was assigned in the giving by the trial court the following requested charge:

"Even though you find and believe from the evidence that the construction and maintenance of defendant's railway embankments and culverts, or any of them, diverted the natural flow either of surface waters or of Mountain creek and caused the same to flow over plaintiff's lands or other property, but you also find from the evidence that the natural conditions of surface waters and the waters of Mountain creek in flood time would have caused plaintiff the same injuries which he did sustain, even if defendant's railway embankments and culverts had not been constructed and maintained as claimed, you are instructed that defendant would not be liable for plaintiff's alleged damages, and you will accordingly return a verdict in favor of defendant."

This court held that the charge was properly given because it was responsive to issues raised by the evidence and the pleading in that case. It was shown in the reported case that flood waters had destroyed a dam across Mountain creek and that appellant's land had been damaged. There was evidence tending to show that the dam was caused to break because of negligence in construction. Raised by said evidence was an issue of fact as to whether the damages suffered by appellant would have been occasioned by the flood waters that caused the break in said dam irrespective of the existence of the dam, appellant's land being "overflow" land. It clearly appears in that case that these two agencies—that is, the waters from the break of the dam and the flood waters—operated concurrently upon appellant's land.

In the instant case there was not only the operation of the flood waters upon appellant's land, but there was the break of the dam in Mountain creek, there was the break of the dump of the Texas & Pacific Railroad, and the break of the dump of appellee's railroad. The break of the said dam and of the railway dumps did not occur at the same time, and hence these agencies did not operate concurrently on appellant's land. Either might have caused the damages suffered by appellant independent of the action of the other. Under the evidence the jury could have found that appellant's entire damages were caused by the break in appellee's dump and the consequent rush of the released waters across his land, previous to the break of the dump in the Texas & Pacific Railway or the break in the said dam, and either of these latter agencies would have wrought the same destruction had it not previously been accomplished. They did not, under the evidence, as in the Scott Case, necessarily act concurrently in causing these damages. That the special requested charge defining and explaining special issue No. "C" failed to recognize this principle of law under these conditions was the vice in the charge. No such condition existed in the charge in the reported case, and hence the cases are easily distinguishable. There is the same distinguishing feature in the instant case and in the case of Railway v. Vogt, supra. If in the instant case there had been only the natural flood waters and the break of the dam operating on appellant's land, then the cases would have been similar.

We have carefully read appellee's motion for rehearing and do not find any cause for changing the original opinion in this case.

The motion for a rehearing is overruled.