## GALVESTON, H. & S. A. RY. CO. v. TODD et al. (No. 2155.)

Court of Civil Appeals of Texas. El Paso. July 9, 1928.

Rehearing Denied Sept. 4, 1928.

1. **Railroads** ⊂⇒114(1)—**Petition for flooding land by construction of roadbed without culverts held sufficiently specific (Rev. St. 1925, art. 6328).**

Landowners' petition, specifically alleging that defendant railroad company violated duty, under Rev. St. 1925, art. 6328, by constructing and maintaining a roadbed without first constructing the necessary culverts or sluices, as the natural lay of the land required, for the necessary draining thereof, resulting in flooding petitioner's land, *held*, as against special exceptions, sufficiently specific as to breach of duty.

2. **Railroads** ⊂⇒108—**Railroad's statutory duty to provide necessary drainage culverts or sluices in constructing roadbed was not removed by another's act contributing to landowner's injury.**

Where railroad's failure in constructing roadbed to provide necessary culverts or sluices as natural lay of land required for the necessary drainage thereof, as provided by statute, resulted in injury to landowner's property, *held* that act of another as a likewise efficient or contributory cause for damage complained of did not remove railroad's statutory duty.

3. **Trial** ⊂⇒215—**Refusal of instructions in nature of general charges held proper, in case submitted on special issues.**

Refusal of instructions in nature of general charges, substantially covered in prior instructions, *held* proper, in case submitted on special issues.

4. **Evidence** ⊂⇒544—**Permitting surveyor and civil engineers to give expert opinions that, in absence of railway roadbed, plaintiffs' land would not have been flooded, held not error.**

In action to recover for damages caused by flooding land as a result of railroad's negligence in the construction of a roadbed, permitting surveyor and civil engineers to give opinions that, if there had been no roadbed, no damage would have resulted, *held* not error; it being within the sound discretion of the trial court to decide upon the qualifications of witnesses to give expert testimony.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by F. H. Todd and another against the Galveston, Harrisburg & San Antonio Railway Company and others. Judgment for plaintiffs, and defendant named appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Kemp & Nagle, of El Paso, for appellant.

Jones, Hardie & Grambling, of El Paso, for appellees.

PELPHREY, C. J. Appellees sued appellant for damages to their lands, caused by it being overflowed by water from a rain on July 27, 1926—their allegations being that appellant had constructed its roadbed in such manner that the water which fell on the lands north, northeast, and northwest of appellant's roadbed was not permitted to flow as it did flow prior to the construction of appellant's roadbed and in accordance with the natural lay of the land; that appellant had constructed its roadbed and was maintaining same without constructing necessary culverts or sluices as the natural lay of the land adjacent to appellee's land and adjacent to the roadbed of appellant required; that appellant was negligent in so constructing and maintaining its roadbed; and that such negligence was the proximate cause of their damage.

The city and county of El Paso were also made parties defendant. Appellees prayed for damages to buildings, furniture, clothing, trees, and loss of 350 chickens from drowning.

Appellant answered by a general demurrer, special exceptions, a general denial, specially pleaded contributory negligence of appellees and that the rain in question was unusual, unprecedented, and could not have been anticipated by ordinary care.

The case was submitted to the jury on certain special issues which will be discussed later in this opinion. The answers of the jury were favorable to appellees, and judgment was rendered by the court in their favor for $2,704.16. This appeal is brought from that judgment.

### Opinion.

[1] Appellant's first proposition is based on the court's action in overruling its special exceptions to appellees' petition. We will here quote that part of the pleading complained of by appellant:

"IV. Plaintiffs allege that, on or about said date of July 27, 1926, there was a rain over that portion of El Paso county which is north of plaintiff's land and also over plaintiff's land and on the land adjacent to plaintiff's land, and that the water which drained off of the ground as a result of said rain was obstructed and collected for a distance of approximately two miles to the north and one mile to the west of plaintiff's property by the roadbed of defendant railway company, and the water which drained off of the ground as a result of said rain was also obstructed and collected for a distance of approximately one mile to the north of plaintiff's land and one-half mile to the east of plaintiff's land. And plaintiffs allege that the defendant Galveston, Harrisburg & San Antonio Railway Company constructed its roadbed about six feet higher than the surrounding natural elevation of the ground, and also constructed borrow pits on both sides of said roadbed, and has constructed a culvert about fifteen feet

wide almost opposite plaintiff's land and directly northeast of plaintiff's land. And plaintiffs allege that there is a culvert under said roadbed of defendant Railway Company which is located about one-half mile west of plaintiffs' land, and that the culvert which is located at said point and the culvert which is located opposite plaintiff's land are the only culverts under the roadbed of the defendant railway company for a distance of approximately three miles. And plaintiffs allege that said roadbed and culverts are so constructed that they do not permit the water which falls on the land north, northeast, and northwest of said roadbed and north, northeast, and northwest of plaintiffs' land to flow as it did flow before said roadbed of said defendant railway company was constructed in accordance with the natural lay of the land. And plaintiffs allege that the defendant railway company has constructed its roadbed, and has at all times maintained and does now maintain its roadbed without first constructing the necessary culverts or sluices as the natural lay of the land adjacent to plaintiffs' land and adjacent to defendant railway company's roadbed requires for the necessary drainage thereof.

"V. Plaintiffs allege that the defendant railway company was guilty of negligence in constructing and maintaining its roadbed, which plaintiffs allege that it did, without first constructing the necessary culverts or sluices as the natural lay of the land requires for the necessary drainage thereof, and plaintiffs allege that said defendant railway company was guilty of negligence in constructing its roadbed in such manner and in maintaining its roadbed in such manner, as plaintiffs allege that said defendants did do at the time of the injuries complained of, so that it did not permit the water falling on the land adjacent to said roadbed to the north, northwest, and northeast in the vicinity of plaintiffs' land to flow after said roadbed and railway was constructed as it did flow before said roadbed was constructed in accordance with the natural lay of the land.

"VI. Plaintiffs further allege that defendant railway company was guilty of negligence in so constructing and maintaining its roadbed prior to and at the time of said overflow with borrow pits and culverts in such manner as to interfere with the natural drainage of water which fell on the land north of plaintiff's land and north of said roadbed, in the vicinity of plaintiffs' land, and that, except for the negligence of the defendant railway company in failing to construct the necessary culverts or sluices as the natural lay of the land north, northeast, and northwest of said roadbed requires for the necessary drainage thereof, and except for the negligence of said defendant railway company in constructing and maintaining its roadbed at the time of said overflow and prior to said overflow in such manner that the rainwater falling on the land north, northeast, and northwest of said roadbed adjacent to plaintiffs' land and in the vicinity of plaintiffs' land could not flow and did not flow after said roadbed was constructed in accordance with the natural lay of the land, plaintiffs' property would not have been damaged, and plaintiffs allege that each and all of the acts of negligence complained of on the part of the defendant railway company directly and proximately caused plaintiffs' land

8 S.W.(2d)—70

to overflow on or about July 27, 1926, and, as a direct and proximate result of each and all of said acts of negligence on the part of the defendant railway company, plaintiffs sustained damages as hereinafter complained of."

Appellant specially excepted to the petition as follows:

"1½. Said defendant specially excepts to that part of plaintiffs' petition, wherein they allege (a) it constructed and maintained its roadbed without constructing the necessary sluices or culverts as the natural lay of the land required, without specifying where or how it so failed, and wherein they alleged (b) that this defendant constructed and maintained its roadbed so that it did not permit the water to flow as it did before the roadbed was constructed, without specifying in what particular this defendant was so in default; and of this exception it prays judgment of the court."

This suit is based upon article 6328, Revised Statutes 1925, which provides:

"In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices as the natural lay of the land requires, for the necessary draining thereof."

By the provisions of this statute, a duty was imposed upon railroad companies in the constructing of their roadbeds, and plaintiffs in the present case have in their petition alleged a violation of that statutory duty and consequent damages to their property from such failure on the part of appellant.

We think the petition is sufficiently specific to put appellant upon notice of the cause of their damage, and therefore the court did not err in overruling the exception.

Appellant next complains of the court's action in refusing a requested charge in its favor. While we will not here quote the evidence, we are of the opinion that it is amply sufficient to justify the submission of the case to the jury and to support its finding that appellant maintained its roadbed adjacent to appellees' property without such culverts or sluices as were necessary to permit the surface water in the vicinity of appellee's land to flow in accordance with the natural lay of the land as it did before the railroad was constructed.

[2] Appellant by its third, fourth, fifth, and sixth propositions further contends that the court erred in submitting any issue to the jury on the theory that the evidence is insufficient to show that any negligence of appellant was the proximate cause of the damage to appellees' property.

A similar question was before this court in the case of G., H. & S. A. Ry. Co. v. Potter Floral & Confectionery Co., 5 S.W.(2d) 839. Justice Walthall, in discussing the liability of the parties in that case, had the following to say:

"But, conceding that the county road and the irrigation canal on the south of the property

are intervening and contributing causes to the damages sustained, which we do not concede, except for the purpose of the question, we understand the rule to be that, if a damage results from two causes, both due to the wrongful or negligent acts of different principals, but together the efficient producing cause, then, in that event, all the persons whose wrongful acts contribute to cause the damage are liable for the damage resulting, and the wrongful act of the one furnishes no excuse for the wrongful act of the other. We can hardly see how it can be a defense in an action for damages resulting from failure to perform a plain statutory duty to provide and maintain necessary culverts and sluices as the lay of the land requires for the necessary drainage, to say that, because the act of another is likewise an efficient cause or a contributing cause for the damage complained of, the statutory duty is thereby removed."

We see no reason for changing our view on the question, and overruled the propositions of appellant.

The eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth assignments all relate to the issues submitted to the jury. The issues submitted were:

"Question No. 1. Do you find from a preponderance of the evidence that the defendant railway company on or about the 27th day of July, 1926, maintained its roadbed adjacent to plaintiff's property without such culverts or sluices as were necessary to permit the surface water in the vicinity of plaintiffs' land to flow in accordance with the natural lay of the land as it did before the railroad was constructed? Answer 'Yes' or 'No.'

"If you answer question No. 1 in the affirmative, then, but not otherwise, answer this additional question:

. "Question No. 2. Do you find from a preponderance of the evidence that the failure of the railway company, if it did so fail, to maintain its roadbed adjacent to plaintiff's land with such culverts or sluices as were necessary to permit surface water in the vicinity of plaintiffs' land to flow as it did before the railroad was constructed, caused more surface water to flow on or to be collected upon plaintiff's land than would otherwise have occurred? Answer 'Yes' or 'No.'

"Question No. 3. Do you find from a preponderance of the evidence that, as a proximate result of such additional water flowing on and being collected on plaintiffs' land, if additional water did so flow on and was collected on plaintiffs' land, plaintiffs suffered any of the damages complained of in their petition? Answer 'Yes' or 'No.'

"Question No. 4. Do you find that the rainfall in the watershed from which the water reaching plaintiffs' land was derived was so unusually excessive as that the railroad company, in the exercise of ordinary care, would not have reasonably anticipated such rainfall? Answer 'Yes' or 'No.'

"If you answer question No. 3 in the affirmative, then, but not otherwise, answer this additional question:

"Question No. 5. What sum, if paid in cash now, do you find from a preponderance would reasonably compensate plaintiffs for the damages, if any, proximately caused by such diversion of the surface water by defendant railway company, if said defendant railway company did so divert such surface water onto plaintiffs' land? In connection with this issue you are charged that the only damage you will find is such damage, if any, as was proximately caused by the railway company in the manner submitted. That, if you find from the evidence that, by defendant railway company's failure to maintain the necessary culverts or sluices as submitted, if it did so fail, the land of plaintiffs' was damaged, you may allow the difference between the reasonable market value of the land just before such injury, and its reasonable market value afterwards. And, if you believe that, as a proximate result of such diversion, certain of plaintiffs' chickens were drowned, you may allow the reasonable market value of such chickens so drowned, and that certain chicken feed belonging to the plaintiffs was so destroyed, you may allow the reasonable market value of such chicken feed at the time of its destruction. And if you believe from the evidence certain of plaintiffs' furniture was damaged by water, caused, as aforesaid, to run upon plaintiffs' land, you may allow the difference between the value of the furniture before and after the injury to it so caused."

After a careful study of the record, we have concluded that the evidence is sufficient to justify the submission of the issues and also to support the jury's findings thereon.

[3] Appellant requested the submission of the following two special charges:

"You are instructed that a railroad company is only required to provide the necessary culverts and sluices as the lay of the land requires for the necessary drainage thereof, and it is not required to remove natural obstructions or obstructions to the natural drainage which may have been constructed by others and in which the railroad company has not participated. Therefore, if you believe from the evidence that the plaintiffs' property was located in a natural depression and that south and southeast thereof was higher ground, which obstructed the flow of the water in the natural drainage thereof, or that the county or state authorities had constructed and maintained the county road or state highway in a manner so as to obstruct the natural drainage of the water off of plaintiffs' land, and that the railroad company did not participate therein, then you are instructed that in such event there would not be imposed upon the railroad company any duty to remove such natural obstructions or such obstructions as may have been placed there by others than the railroad company."

"In answering question No. 5, submitted to you by the court, you are instructed that you in no wise consider any damage which the plaintiffs would have sustained, if any, by reason of the location of the premises in question or by reason of the acts of any other parties, if any, other than the Galveston, Harrisburg & San Antonio Railway Company, and, in the event you should answer said question, you will consider only such damage, if any, as you may find was

proximately caused by the defendant Galveston, Harrisburg & San Antonio Railway Company."

The court's refusal to give the above instructions is made the basis for appellant's nineteenth and twentieth assignments of error.

[4] It is our view that they were substantially covered by the charge given, and that, they being in the nature of general charges, were objectionable in a case submitted, as was the present one, on special issues. Complaint is also made of the court's action in permitting the witness Owen to testify, over the objection of appellant, that, if there had been no roadbed of the railway company west of culvert No. 825A, the water would have traveled all over the land, that there would not have been anything like the amount of water congregated on plaintiffs' land as did congregate thereon, and that, if the water had had its natural course of flow, it would have drained entirely off of plaintiffs' land except in the low spots.

The record discloses that the witness Owens is a state surveyor and civil engineer, and has been engaged in that work in the vicinity of El Paso for almost 30 years, that he went upon the ground alleged to have been flooded and made a map of the lands in the vicinity thereof, and that the testimony offered by him is based upon his investigation and from his experience as a civil engineer.

· It being within the sound discretion of the trial court to decide upon the witness' qualifications to give expert testimony, we can see no reversible error in the court's action in permitting him to give his opinion based upon the investigation made upon the ground.

The same seems to be true of the testimony of the witness Frank H. Todd, who the record shows to have been a civil engineer all his working life.

We have examined the entire record with care, have read the able briefs presented by the parties, and, finding no reversible error, the judgment of the trial court is in all things affirmed.