## WALKER et al. v. TEXAS MEXICAN RY. CO.

### No. 8358.

Court of Civil Appeals of Texas. San Antonio.
Feb. 19, 1930.

Rehearing Denied March 19, 1930.

the cotton on about 200 acres, then well advanced towards maturity; that the natural drain of the water was in a southerly direction, and the flow of the water was retarded and diverted by the roadbed, and appellee did not maintain sufficient openings along its roadbed for the water to pass in its natural course; and that, if it had not been for the manner of constructing the roadbed and the failure of appellee to maintain sufficient openings through its roadbed, the water would have passed off of the land in its natural course and the crop would not have sustained the damage. Appellants alleged that, taking into account the yield of cotton on other lands and the probable yield of the cotton on the land so destroyed by the water, after deducting the cost of cultivating and marketing the same, appellants were damaged in the sum of $12,090.

The defense was that a rainstorm of such intensity and volume fell as was not foreseen in the exercise of ordinary care and such as to constitute an act of God, and that such rainstorm, and not the failure of the appellee to exercise ordinary care, was the proximate cause of appellants' damage; that appellants had constructed upstream, as it were, from the trestle bridge of appellee, a semicircular ridge or dam, which obstructed the flow of water from the land of appellants through said trestle bridge and thereby contributed to their damage.

■ Appellee has filed numerous objections to our considering the propositions tendered by appellants, but, as it is our duty to affirm all cases when possible, and we regard it our duty, upon the evidence and jury finding, to affirm this case, and, for the reason that the propositions of appellants are without merit, they are overruled. City of Amarillo v. Loden (Tex. Civ. App.) 22 S.W.(2d) 969; Vasser v. City of Liberty, 50 Tex. Civ. App. 111, 110 S. W. 119.

The jury found that the construction and maintenance of the railroad bed did not cause the water to be impounded on appellants' land, and that the acts of the appellee did not contribute to the injury and damage of appellants; that the water which overflowed the land of appellants was produced by a rainfall of extraordinary volume and intensity; that, if all other physical conditions on the ground had been precisely as the evidence shows them to have been, and if the same rain had fallen as did fall, it would have overflowed the land if the appellee had maintained no embankment at that time; that the damage sustained by appellants was not caused by the water being impounded in the manner alleged. The manner alleged was summarized in the supplemental petition of appellants to be negligence on the part of appellee in the construction and maintenance of its roadbed.

J. D. Todd and E. B. Ward, both of Corpus Christi, for appellants.

J. D. Dodson, of San Antonio, Asher Smith, of Laredo, and H. R. Sutherland, of Corpus Christi, for appellee.

COBBS, J.

Appellants C. V. Walker and V. M. Donigan sued appellee, Texas Mexican Railway Company, to recover damages to a growing cotton crop, sustained on or about May 5, 1926. It was alleged that the land of appellant Donigan, which was being cultivated by appellant Walker for a one-half share of the crop, consisting of about 350 acres in cotton, was situated north of and adjoining the railway right of way of appellee, and that the roadbed was constructed along the south line of appellant's land; that on or about May 5, 1926, on account of the roadbed of appellee, water was impounded and remained on appellant's land for a sufficient length of time to drown

There is no finding by the jury that appellee was guilty of negligence, which would have been necessary for a judgment to be rendered for appellants.

Appellee specifically pleaded that the rainstorm was of such intensity and volume as was not foreseen in the exercise of ordinary care, and was such as to constitute an act of God. We cannot say that it was an unforeseen act of God, for such a rain had occurred there three times at least before, though perhaps neither of them was of as great severity as the present rainfall.

Appellee alleged that parallel to the roadbed there existed, at the time of the flood, a highway dump constructed by some governmental authority, and which had less provision for carrying the flood waters than the roadbed of appellee, and that, if the proximate cause was not the unprecedented rainfall, then it was the maintenance of the highway dump, for which appellee was not responsible. The railroad bed of appellee was constructed prior to that of the highway.

It will be perceived, by reference to the blueprint introduced on page 63 of the statement of facts (reproduced herewith) that it shows the actual relative elevations on the land every 300 feet for a distance of 800 feet north of the track and for the same distance south of the track for the entire length of appellants' farm. This map, showing relative levels, discloses that there is but very slight difference between the levels 800 feet north of the track and correspondingly at 800 feet south of the track, but that there is a slight slope from west to east and from east to west on this land; the lowest point being about where the bridges are marked on the blueprint, and where the excavated tank is marked on the land of appellants.

On page 67 of the statement of facts there is a blue-print made by the county surveyor of Nueces county (reproduced herewith) showing the relative locations and sizes of drains,

MILE 157

SMALL TRESTLE
AREA WATERWAY: 13.6 Sq. Ft.

← CONCRETE CULVERT
AREA WATERWAY: 7.2 Sq. Ft.

BOX CULVERT
AREA WATERWAY: 4 Sq. Ft.
BOX CULVERT
AREA WATERWAY: 4.2 Sq. Ft.
24" CORRUGATED IRON CULVERT
AREA WATERWAY: 3.1 Sq. Ft.
24" CORRUGATED IRON CULVERT
AREA WATERWAY: 3.1 Sq. Ft.
SMALL TRESTLE
AREA WATERWAY: 5.5 Sq. Ft.

MILE POST 155
5 SPAN TRESTLE
AREA WATERWAY: 223.5 Sq. Ft.

← CONCRETE BRIDGE
AREA WATERWAY: 248. Sq. Ft.

24" CORRUGATED IRON CULVERT
AREA WATERWAY: 3.1 Sq. Ft.

SMALL TRESTLE
AREA WATERWAY: 7 Sq. Ft.
24" CORRUGATED IRON CULVERT
AREA WATERWAY: 3.1 Sq. Ft.

SMALL TRESTLE
AREA WATERWAY 3.5 Sq. Ft.
MILE POST 154
SMALL TRESTLE
AREA WATERWAY: 6.8 Sq. Ft.

2 SPAN TRESTLE
AREA WATERWAY: 33.6 Sq. Ft.

← CONCRETE CULVERT.
AREA WATERWAY: 40. Sq. Ft.

CLARKWOOD

TEXAS MEXICAN RAILWAY — To CORPUS CHRISTI

STATE HIGHWAY No. 16 — To ROBSTOWN

SKETCH SHOWING DRAINAGE STRUCTURES ON HIGHWAY AND ON TEXAS MEXICAN RAILWAY BETWEEN CLARKWOOD AND MILE POST 157

culverts, and bridges in the roadbed of the appellee and of the highway along the Donigan farm.

It was shown that, when the highway bridge was constructed opposite that of the trestle bridge of appellee, marked "Mile Post 155" on the blueprint, page 67, statement of facts, "it was so constructed as to leave 51 square feet of its carrying surface above the full water line from that of the trestle bridge of appellee, so that when the trestle bridge of appellee, which delivered 223 square feet of water, was delivering its capacity to the concrete bridge under the highway opposite the trestle bridge, the concrete bridge provided only 200 square feet of carrying capacity to handle 223 square feet of water." By adding the total carrying capacities of the concrete bridge and two concrete culverts under the highway, allowing the 200 square feet which was available at the concrete bridge under the highway, it is found that the total carrying capacity under the highway was 247.2 square feet, and that the total carrying capacities of the culverts and trestle bridge provided by appellee was 313.6 square feet.

A railroad is only required to construct its roadbed and track as to avoid such damages as could be reasonably foreseen by competent and skillful engineers, and would not be required to provide against extraordinary floods or other inevitable casualties caused by some higher force of nature unknown to common experience. International & G. N. Railroad Co. v. Halloren, 53 Tex. 54, 37 Am. Rep. 744; Nashville Ry. Co. v. Yarbrough, 194 Ala. 162, 69 So. 582.

Appellants contend that this rainfall was not of extraordinary volume and intensity, as there had been as much water on three previous occasions, but it must be remembered that each of the former storms was a West India hurricane; and our courts have uniformly held that, where one of these hurricanes is the proximate cause of damage, a carrier is not liable. Hunt v. Missouri, K. & T. R. Co. (Tex. Civ. App.) 74 S. W. 69.

While the court is required to "submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict." (article 2189, R. S. 1925), there is no obligation imposed upon the court to give definitions of ordinary words and phrases.

We do not think there was any error in the appellee showing, as it did, and the jury finding, that, if there had been no roadbed constructed and maintained, the flood would have existed just the same. This proposition is covered by the case of Galveston, H. & S. A. R. Co. v. Todd (Tex. Civ. App.) 8 S.W.(2d) 1104. It was proper to show that, because of the natural lay of the land, it would have been flooded with the same rain in the absence of the embankment. Gulf, C. &

S. F. R. Co. v. Huffman (Tex. Civ. App.) 81 S. W. 536.

In this case there is an affirmative finding that nothing was done by appellee that contributed to the flood.

Appellants urge and strongly insist that the case is controlled by that of Fugitt v. Farrell (Tex. Civ. App.) 250 S. W. 1108. But the facts differ in the two cases, and the facts in the Fugitt v. Farrell Case do not apply here. The court, in its opinion in the Fugitt Case, approved its former holding in Scott v. Northern Texas Co. (Tex. Civ. App.) 190 S. W. 209, where the following charge was given:

"Even though you find and believe from the evidence that the construction and maintenance of defendant's railway embankments and culverts, or any of them, diverted the natural flow either of surface waters or of Mountain creek and caused the same to flow over plaintiff's lands or other property, but you also find from the evidence that the natural conditions of surface waters and the waters of Mountain creek in flood time would have caused plaintiff the same injuries which he did sustain, even if defendant's railway embankments and culverts had not been constructed and maintained as claimed, you are instructed that defendant would not be liable for plaintiff's alleged damages, and you will accordingly return a verdict in favor of defendant."

Continuing its opinion on motion for rehearing, in the Fugitt Case the court said:

"It clearly appears in that case that these two agencies—that is, the waters from the break of the dam and the flood waters—operated concurrently upon appellant's land.

"In the instant case there was not only the operation of the flood waters upon appellant's land, but there was the break of the dam in Mountain creek, there was the break of the dump of the Texas & Pacific Railroad, and the break of the dump of appellee's railroad. The break of the said dam and of the railway dumps did not occur at the same time, and hence these agencies did not operate concurrently on appellant's land. Either might have caused the damages suffered by appellant independent of the action of the other."

While it is true that no judgment should be entered upon conflicting findings, we do not find that the verdict in this case is subject to that vice. The findings here are manifestly consistent. The jury found by special issue No. 2 that the construction and maintenance of the roadbed by appellee did not cause the water to be impounded upon appellants' lands; by issue No. 3½, that the acts of appellee did not contribute to the damage; by issue No. 4, that the water which overflowed was produced by rainfall of extraordinary volume and intensity; by issue No. 6, that, if the roadbed of appellee had not

existed and the other physical conditions had existed precisely as they did exist, the land would have overflowed as it did overflow; by special issue No. 7, when considered in connection with the charge given therewith, the jury found that the damage was not caused "in the manner alleged" by appellants (by negligent construction and maintenance of the roadbed on the part of appellee). The jury also found by special issue No. 1 that the embankment of appellee diverted the water from its natural course; by special issue No. 3, that there were not sufficient openings in the embankment for the water to pass through the roadbed without changing its natural course. These two findings are manifestly consistent. If sufficient openings had been provided to permit the water to pass without changing its natural course, it would follow that the embankment did not divert the water from its natural course. The authorities cited by appellants, which hold that conflicting findings will not support a judgment, do not apply in this case.

We have carefully read and considered all the assignments and propositions based thereupon, and they are overruled.

Finding no material and substantial errors committed by the trial court, we affirm the judgment.