PD-1465-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/11/2015 11:56:45 AM
Accepted 11/12/2015 2:17:01 PM
ABEL ACOSTA
CLERK

No. _____

## IN THE

## TEXAS COURT OF CRIMINAL APPEALS

**No. 14-14-00844-CR**
In the Fourteenth Court of Appeals
of Texas

**Justin Ross Allen,** *Appellant*

v.

**The State of Texas,** *Appellee*

## Appellant's Petition for Discretionary Review

Jerald K. Graber
TSB # 08240320
917 Franklin, Suite 510
Houston, Texas 77002
Tel. 713-224-232
graberlaw@sbcglobal.net
Attorney for Appellant

FILED IN
COURT OF CRIMINAL APPEALS

November 12, 2015

ABEL ACOSTA, CLERK

## Statement Regarding Oral Argument

Appellant waives oral argument.

## Identity of Judge, Parties, and Counsel

Pursuant to TEX. R. APP. P. 38.1(a), the following persons are interested parties:

Appellant

Mr. Justin Ross Allen
TDCJ # 01960145
Holliday Unit
295 IH-45 North
Huntsville, TX 77320

Trial Judge

The Honorable Brad Hart
230th District Court
1201 Franklin
Houston, Texas 77002

Attorneys for State

Ms. Sarah Roberts and Ms. Lisa Calligan (in trial)
Mr. Alan Curry (on appeal)
Harris County DA's Office
1201 Franklin, 6th Floor
Houston, Texas 77002

Attorney for Appellant

Mr. Gordon Dees and Mr. William Denham (in trial)

Mr. Jerald K. Graber (on appeal)
917 Franklin, Suite 510
Houston, Texas 77002

# Table of Contents

|                                                    | Page |
| -------------------------------------------------- | ---- |
| STATEMENT REGARDING ORAL ARGUMENT                  | 2    |
| IDENTITY OF JUDGE, PARTIES, AND COUNSEL            | 3    |
| TABLE OF CONTENTS                                  | 4    |
| INDEX OF AUTHORITIES                               | 5    |
| STATEMENT OF THE CASE                              | 6    |
| STATEMENT OF PROCEDURAL HISTORY                    | 6    |
| APPELLANT'S GROUNDS FOR REVIEW                     | 7    |
| REASON FOR REVIEWING GROUNDS FOR REVIEW            | 7    |
| ARGUMENT                                           | 8    |
| CONCLUSION and PRAYER FOR RELIEF                   | 14   |
| CERTIFICATE OF COMPLIANCE                          | 14   |
| CERTIFICATE OF SERVICE                             | 15   |

# Index of Authorities

## Cases                                                                Page

*Cook v. State,*                                                        9, 11
    884 S.W.2d 485 (Tex. Crim. App. 1994)

*Jackson v. Virginia,*                                                  8, 11
    443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89,
    61 L.Ed.2d 560 (1979)

*Leal v. State,*                                                        9, 11
    800 S.W.2d 346, 348
    (Tex. App., Corpus Christi 1990, pet ref.)

*Lugo-Lugo v. State,*                                                   9, 11-12
    650 S.W.2d 72, 81 (Tex. Crim. App. 1983)

*Saxton v. State,*                                                      12
    804 S.W.2d 910, 911 (Tex. Crim. App. 1991)

*Thomas v. State,*                                                      13
    578 S.W.2d 691, 698 (Tex. Crim. App. 1979)


## Statutes, Codes and Rules

Tex. Pen. Code § 6.03(a), (b)                                          9, 11

Tex. Pen. Code § 9.32                                                  13

Tex. Pen. Code § 19.02(b)(1), (2)                                      8, 9, 11

Tex. R. App. Proc. 66.3 (c) and (f)                                    8

**To the Honorable Court of Criminal Appeals:**

## Statement of the Case

Appellant was charged by indictment with the felony offense of murder. (CR 10). Appellant entered a plea of "not guilty" and the case was tried before a jury. (RR III 23). The jury found appellant guilty as charged in the indictment. (CR 97). Thereafter, the jury assessed a sentence of 13 years in prison. (RR IV 12). Appellant timely filed a written notice of appeal. (CR 128). The trial court certified the defendant's right of appeal. (CR 130).

## Statement of Procedural History

On November 10, 2015 a panel of the Fourteenth Court of Appeals issued an unpublished opinion affirming the trial court's judgment in this case. Appellant files this first petition for discretionary review with this Court.

## Appellant's Grounds for Review

1) The Court of Appeals erred in holding the evidence sufficient to support the jury's verdict of guilt for murder. No trier of fact could have found that appellant either intentionally or knowingly caused the death of the complainant or intended to cause serious bodily injury to the complainant.

2) The Court of Appeals erred in holding the evidence sufficient to support the jury's verdict of guilt for murder since no rational trier of fact could have found beyond a reasonable doubt that appellant did not act in self-defense.

## Reason for Reviewing Appellant's Ground for Review

The lower Court's ruling should be reviewed pursuant to Tex. R. App. P. 66.3(c) and (f).

## Argument

Ground for Review Number One:

The evidence is legally insufficient to support the jury's finding that appellant intentionally or knowingly caused the death of the complainant, James Taylor. In this case, the evidence does not prove beyond a reasonable doubt that appellant either intentionally or knowingly caused the death of the complainant or intended to cause serious bodily injury to the complainant. Thus, the evidence is insufficient to support the jury's guilty verdict on murder. The trial judge erred by not granted appellant's motion for an instructed verdict of not guilty.

In reviewing the legal sufficiency of evidence, courts consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). As charged in the indictment and the jury charge, a person can commit murder if he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Pen. Code § 19.02(b)(1), (2). An intentional killing occurs when the person's conscious desire or objective is to cause the

8

death of another. A knowing killing occurs when the person knows that death is reasonably certain. Tex. Pen. Code § 6.03(a), (b). Thus a knowing killing contemplates the commission of an act that is objectively dangerous to human life. *Lugo-Lugo v. State*, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983). To prove murder under this theory, the state must prove that the defendant intentionally or knowingly engaged in an act that caused the death and intended or knew that death would result from that act. *Leal v. State*, 800 S.W.2d 346, 348 (Tex. App., Corpus Christi 1990, pet ref.). Intentional and knowing murder under §19.02(b)(1), (2) is a result-of-conduct offense. *Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994). Thus, the culpable mental state is focused on the defendant's intent to achieve the result, rather than the defendant's knowledge regarding the conduct. *Lugo-Lugo v. State*, 650 S.W.2d at 81.

In this case, at the close of the State's case-in-chief, appellant made a motion for an instructed verdict of not guilty. The motion was denied by the trial judge. (RR IV 80). The trial judge erred by not granting appellant's motion for an instructed verdict of not guilty since the state's case-in-chief did not prove the essential elements of murder. The state only proved that (1) the complainant died from blunt force trauma to his head and neck area, (2) appellant told his father that the complainant "wasn't going to make it to work the next day because he was dead in a blanket in the motel room," and (3)

9

appellant was located and arrested outside at a nearby hotel. (RR III 49, 236, IV 13-14, 34). There was no evidence directly or indirectly linking the death of the complainant to appellant. The fact that appellant and the complainant were sharing a motel room is not any evidence that appellant was the actual person who caused the death. Furthermore, there was no evidence presented through appellant's father that appellant admitted to the killing. Thus, the evidence is legally insufficient to support a finding that appellant either intentionally or knowingly caused the death of the complainant or intended to cause serious bodily injury to the complainant, and the trial judge erred by not granting appellant's motion for an instructed verdict of not guilty at the close of the state's case-in-chief. Thus, the Court of Appeals erred in finding the evidence sufficient to support the verdict. Appellant should be acquitted by this Court.

Ground for Review Number Two:

The evidence is legally insufficient since no rational trier of fact could have found beyond a reasonable doubt that appellant did not act in self-defense. There is no evidence in this case to disprove that appellant did not act in self-defense. Self-defense is the only logical explanation for what happened.

Appellant asserts there was insufficient evidence to disprove self-defense beyond a reasonable doubt. The jury was instructed to acquit appellant

unless it believed beyond a reasonable doubt that he did not act in self-defense. (CR 89-93). In reviewing the legal sufficiency of evidence, courts consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). As charged in the indictment and the jury charge, a person can commit murder if he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Pen. Code § 19.02(b)(1), (2). An intentional killing occurs when the person's conscious desire or objective is to cause the death of another. A knowing killing occurs when the person knows that death is reasonably certain. Tex. Pen. Code § 6.03(a), (b). Thus a knowing killing contemplates the commission of an act that is objectively dangerous to human life. *Lugo-Lugo v. State*, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983). To prove murder under this theory, the state must prove that the defendant intentionally or knowingly engaged in an act that caused the death and intended or knew that death would result from that act. *Leal v. State*, 800 S.W.2d 346, 348 (Tex. App., Corpus Christi 1990, pet ref.). Intentional and knowing murder under §19.02(a)(1), (2) is a result-of-conduct offense. *Cook v. State*, 884 S.W.2d 485

11

(Tex. Crim. App. 1994). Thus, the culpable mental state is focused on the defendant's intent to achieve the result, rather than the defendant's knowledge regarding the conduct. *Lugo-Lugo v. State*, 650 S.W.2d at 81. Furthermore, in reviewing the sufficiency of the evidence in self-defense cases, courts not only consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt but **also** determine whether the jury could have found beyond a reasonable doubt that appellant **did not** act in self-defense. *Saxton v. State*, 804 S.W.2d 910, 911 (Tex. Crim. App. 1991).

In this case, the jury was instructed on the use of deadly force in self-defense. The jury was instructed properly that if you find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct or both of James Taylor it caused a reasonable expectation or fear of the imminent commission of the offense of sexual assault at the hands of James Taylor and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against James Taylor's imminent commission of sexual assault, he struck James Taylor with a hammer or an unknown object, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense

on said occasion and under the circumstance, then you should give the defendant the benefit of that doubt and say by your verdict, not guilty. (CR 89-93); Tex. Pen. Code § 9.32. The charge accurately applies the law that appellant legally may use deadly force against the complainant to escape from being the victim of a crime before or during the commission of that crime. *Thomas v. State*, 578 S.W.2d 691, 698 (Tex. Crim. App. 1979).

Appellant did not have any motive or reason to strike the complainant with the hammer other than the fact that he had been sexually assaulted the previous day and was in the grips of being sexually assaulted at the time of the killing. A rational jury could not have found beyond a reasonable doubt against appellant on the issue of self-defense. Appellant explained that the complainant, at the time of the killing, was restraining appellant and attempting to rape him again. (RR IV 146-147). That is the sole reason appellant grabbed the hammer and struck the complainant on the neck two times. His intent was not to kill him, but to defend himself from another sexual assault. All appellant wanted was for the complainant to get off of him and not sexually assault him again. (RR IV 150). The fact that appellant only struck the complainant two times with a hammer proves that he did not intend to kill the complainant, but only acted in self-defense. If a person intended to kill another, it is highly likely that one would use much more force and

violence than only two hammer strikes to the neck. If appellant had the intent to kill, Mr. Taylor would have had many more injuries to his body. Frankly, there is no evidence in this case to disprove that appellant did not act in self-defense. Self-defense is the only logical explanation for what happened.

Therefore, since the evidence did not prove beyond a reasonable doubt that the defendant was not acting in self-defense on said occasion and under the circumstance, the defendant is entitled to the benefit of that doubt. Thus, the Court of Appeals erred in finding the evidence sufficient to support the verdict. Appellant should be acquitted by this Court.

## Conclusion and Prayer

Appellant prays that this Honorable Court grant Appellant's Petition for Discretionary Review, reverse the decision of the Court of Appeals, and acquit Appellant.

Respectfully Submitted,

/s/ Jerald Graber

_____

Jerald K. Graber
917 Franklin, Suite 510
Houston, Texas 77002
713-224-2323
Attorney for Appellant

## Certificate of Compliance

I, Jerald K. Graber, do certify that this petition is in compliance with Rule 9 since the entire document consists of 2,325 words and is typed using 14-point font.

/s/ Jerald Graber

_____
Jerald K. Graber

## Certificate of Service

I hereby certify that a copy of this PDR was served upon the following parties via e-file:

Alan Curry
Harris County District Attorney's Office
1201 Franklin, 6th Floor
Houston, TX 77002

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13406
Austin, Texas 78711-3046

/s/ Jerald Graber

_____
Jerald K. Graber



In The

# Fourteenth Court of Appeals

## NO. 14-14-00844-CR

**JUSTIN ROSS ALLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1407495**

## MEMORANDUM OPINION

Appellant appeals his conviction for murder. In two issues he challenges the sufficiency of the evidence to support the conviction. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and several co-workers were staying at a motel in Houston while working on a construction job. Appellant's father was the supervisor. Appellant and the complainant were staying in the same motel room. On the night of the

offense, appellant, the complainant, and a co-worker named German Aguilar were working the night shift. In the early morning hours appellant came to his father's motel room and told his father that the complainant would not be reporting for work the next day because he was dead in appellant's motel room.

When Harris County Sheriff's deputies arrived, appellant's father directed the investigation toward appellant's motel room. Inside the deputies found the complainant's body wrapped in a blanket on the floor. The deputies did not see appellant, and advised the dispatcher that appellant was a suspect and that he was not at the scene. The deputies also discovered sheets, pillowcases, and a pillow from the bed in the bathtub with soapy water. The bed that the complainant had occupied during the motel stay did not have any bedding. The other bed, in which appellant had been sleeping, still had bedding on it. The complainant had wounds to the back of his neck that initially appeared to be stab wounds.

After getting a search warrant, law enforcement officers searched the motel room and discovered a hammer inside of two trash bags. The hammer appeared to have been placed in a clear plastic bag and then the clear bag containing the hammer had been placed in a black plastic trash bag. The officers discovered blood on the headboard of the complainant's bed and on the sheet covering the complainant's body. The complainant's body was fully dressed.

Because appellant had left the scene, the Harris County canine unit was called out to help search for him. The canine unit reported to the La Quinta motel, where appellant had last been seen. When the search dog alerted on appellant in the high grass of a retention pond near the motel, the canine handler shined his flashlight and saw appellant lying on the ground. Because the dog is trained to engage with the suspect, the dog bit appellant. The handler did not instruct the dog to release appellant until appellant was handcuffed. Later, appellant received

2

treatment at the hospital for the dog bite.

### *Appellant's Testimony*

Appellant testified that he and the complainant had been roommates for approximately three weeks. According to appellant, the complainant often mentioned his lack of sexual intercourse, showered with the door open, and masturbated approximately every other day. Appellant testified that the complainant's conduct made him uncomfortable.

According to appellant, the complainant took sleeping medication every night. On the night before the offense, appellant and the complainant returned to the motel from the night shift. The complainant took a shower while appellant made a sandwich, drank a beer, and began to watch television. Appellant took a sip from his second beer when he decided to take a shower. Appellant left his open beer in the room while he was in the shower. After getting out of the shower, appellant drank the rest of the second beer and then drank a third beer before going to bed. Appellant testified that he felt more groggy than usual after drinking three beers. At some point after going to bed appellant was awakened by a hand on his shoulder. When appellant awoke he discovered his underwear and pajama pants were pulled down to his ankles. He also heard the complainant climbing into the complainant's bed. Appellant felt what he thought was semen on his buttocks.

Appellant woke up late that afternoon and prepared for the night shift. The shift ended early because a part on the machine they were using broke. Appellant, the complainant, and Aguilar returned to the motel. Appellant asked Aguilar for the keys to Aguilar's van from which appellant retrieved a battery charger for a power tool and a hammer. Appellant returned to the motel room and placed the battery charger and hammer on his bed. After approximately five minutes the complainant grabbed appellant in a "bear hug," and the two men fell onto the bed.

3

The complainant was on top of appellant and began "humping" appellant. Appellant grabbed the hammer and hit the complainant twice in the back of the head, which caused the complainant to fall onto the bed. Appellant moved the complainant's body to the floor and covered him with a sheet. Appellant took the other sheet from the bed, put it in the bathtub, and turned on the water. Appellant then walked to his father's room and reported that the complainant would not be at work that day because he was dead. Appellant's father told appellant he would call 911. Appellant then returned to his motel room, drank approximately four beers, smoked a cigarette, and placed the hammer inside two plastic bags in the trash can of his motel room. When appellant saw the police arrive, he fled to a nearby La Quinta motel, jumped over a fence, and hid in a retention pond until the canine unit found him.

On cross-examination appellant testified he did not remember closing the trash bag that contained the hammer, nor did he remember taking the pillow from the bed out of the pillowcase and placing the pillowcase and pillow in the bathtub.

### State's Rebuttal Evidence

The forensic sexual assault nurse examiner testified that she performed a physical examination on appellant while he was sedated in surgery.[1] Her physical examination revealed scratches on appellant's rib cage, but no evidence of sexual trauma. After appellant woke from surgery, the nurse attempted to obtain an oral history from appellant. Appellant replied, "I prefer not to talk about it, not without my lawyer present." The nurse reported that appellant "became very tearful," and stated he did not want to talk about the alleged sexual assault at that time. The nurse testified that it was not uncommon for a victim of sexual assault to become tearful.

---

[1] Appellant required surgery as a result of the dog bite.

4

## II. ISSUES AND ANALYSIS

Appellant presents two issues on appeal. He asserts that the evidence is legally insufficient to support his conviction in that (1) there is no evidence of intent to murder, and (2) the State failed to sufficiently refute appellant's evidence of self-defense.

Appellant argues that the trial court erred in denying his motion for instructed verdict because at the close of the State's case-in-chief the State had proved only that (1) the complainant died from blunt force trauma, (2) appellant told his father that the complainant "wasn't going to make it to work the next day because he was dead in a blanket in a motel room," and (3) appellant was located and arrested outside of the motel.

A challenge to the trial court's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). Therefore, when considering whether the trial court erred in overruling a motion for instructed verdict, the reviewing court is not limited to a review of the evidence presented in the State's case-in-chief. *Id.* We will consider appellant's issues in light of the well-established standard of review applicable to a challenge to the sufficiency of the evidence to support a conviction.

In evaluating a challenge to the sufficiency of the evidence supporting a conviction, we view all of the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819

5

S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

**A. Is the evidence sufficient to support the jury's finding that appellant intended to kill the complainant?**

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1), (2) (West 2011). A person acts with intent "with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (West 2011). A person acts knowingly with respect to his conduct when that person is aware the conduct is reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(a).

The State initially argues that appellant's first issue should be overruled because appellant testified he committed the offense in self-defense. Because an act of self-defense is an intentional act, the State argues appellant cannot challenge the sufficiency of the evidence to support intent to kill the complainant. The Court of Criminal Appeals of Texas, however, has held that the Penal Code does not require that a defendant intend the death of an attacker for the appellant to be

6

justified in using deadly force in self-defense. *Alonzo v. State*, 353 S.W.3d 778, 783 (Tex. Crim. App. 2011). Therefore, appellant may argue that he acted in self-defense, but, in doing so, did not intend to kill the complainant.

Intent, being a question of fact, is in the sole purview of the jury. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). A jury may rely on collective common sense and common knowledge when determining intent. *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.). Intent also may be inferred from the circumstantial evidence surrounding the incident, which includes acts, words, and conduct of the accused. *See* Tex. Code Crim. Proc. Ann. art. 38.36(a) (West 2005); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim App. 1995).

The jury heard evidence that during the day, before the complainant's death, appellant retrieved a hammer from Aguilar's truck. Appellant admitted hitting the complainant in the back of the head with a hammer. Appellant testified that after he struck the complainant with the hammer, he stripped the sheets from the bed and placed them in the bathtub with soap and water. Appellant also admitted he wrapped the hammer in two trash bags and placed them in the motel room trash bin. Appellant then fled the motel where the complainant was killed and hid in a retention pond until a Sheriff's office canine unit found him. "Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The jury could have inferred intent from the evidence of appellant's (1) acquisition of the murder weapon earlier in the day, (2) attempts at concealment, and (3) flight from the scene of the offense that he intended to kill the complainant. *See id.* Finding sufficient evidence that appellant intentionally committed an act clearly dangerous

7

to human life, we overrule appellant's first issue.

**B. Is the evidence sufficient to support the jury's rejection of appellant's self-defense theory?**

In his second issue appellant argues there was insufficient evidence to "disprove" self-defense beyond a reasonable doubt. The State, however, was not required to "disprove" self-defense. Because appellant raised the issue of self-defense, the State had to prove the elements of the offense beyond a reasonable doubt, and the State had to persuade the jury that appellant did not kill the complainant in self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani*, 97 S.W.3d at 594. Once the defendant produces that evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id*. The burden of persuasion does not require the State to produce evidence; it requires only that the State prove its case beyond a reasonable doubt. *Id*. A determination of guilt by the factfinder implies a finding against the defensive theory. *Id*.

A person is justified in using deadly force against another when and to the degree the person reasonably believes the deadly force is immediately necessary to prevent the other's imminent commission of sexual assault. Tex. Penal Code § 9.32(a)(2)(B) (West 2011). In resolving the sufficiency-of-the-evidence issue, we look not to whether the State presented evidence that refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

8

Defensive evidence that is merely consistent with the physical evidence at the scene will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence. *Saxton*, 804 S.W.2d at 914.

Appellant argues it was unreasonable for the jury to have rejected his claim of self-defense because he had no motive to kill the complainant. Appellant contends that the only reason he struck the complainant with the hammer was in self-defense. The jury also heard evidence that appellant retrieved the hammer from his co-worker's truck and placed it on the bed in the motel room. The complainant was struck in the back of the head, which is inconsistent with appellant's testimony that the complainant approached him from behind. Moreover, the physical evidence revealed blood spatter on the complainant's headboard, but not on the bed in which appellant had been sleeping. The bedding was still on appellant's bed, but had been removed from the complainant's bed and placed in the bathtub.

Any alleged inconsistencies in the evidence and the witnesses' testimony concern the credibility and weight to be given their testimony. *See Lancon v. State*, 253 S.W.3d 699, 705–07 (Tex. Crim. App. 2008). To the extent the testimony is inconsistent, the jury, as the trier of fact, had the ultimate authority to determine the credibility of witnesses and the weight to be given to their testimony. *See* Tex. Code Crim. Proc. art. 38.04; *Garcia v. State*, 919 S.W.2d 370, 382 n. 6 (Tex. Crim. App. 1996). Any inconsistencies in the evidence should be resolved in favor of the jury's verdict in a sufficiency review. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988); *Draper v. State*, 335 S.W.3d 412, 415 (Tex. App.—Houston

9

[14th Dist.] 2011, pet. ref'd).

Considering all of the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support the jury's implicit rejection of appellant's claim of self-defense. We overrule appellant's second issue.

Having overruled all of appellant's challenges on appeal, we affirm the trial court's judgment.


/s/    Kem Thompson Frost
            Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).

10